### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| BRESHETTA CLARK and RILEY TURNER, | ) ) ) | |
|     Plaintiffs, | ) ) | |
| v. | ) ) | No. 07-2367-cv-JPM-tmp |
| HOOPS, LP, d/b/a THE MEMPHIS "GRIZZLIES" | ) ) ) | |
|     Defendant. | ) | |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF RILEY TURNER

Before the Court is Defendant Hoops, LP's Motion for Summary Judgment against Plaintiff Riley Joe Turner (Docket Entry ("D.E.") 196), filed February 12, 2010.  Plaintiff Riley Joe Turner ("Plaintiff") filed a response in opposition to Defendant's motion on March 15, 2010.  (D.E. 207.)  With leave of Court, Defendant filed a reply in support of its motion on March 19, 2010.  (D.E. 213.)  For the following reasons, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment against Plaintiff Riley Turner.

## I.   Background

This case arises from Plaintiff's employment with Defendant Hoops, LP, d/b/a the Memphis Grizzlies ("Defendant" or "Hoops").  Plaintiff was hired as a building operator in August 2004.

(Def.'s Statement of Undisputed Material Facts (D.E. 196-2) ¶ 1.)  As a building operator, Turner was one of several employees responsible for the day-to-day operations of the FedEx Forum located in Memphis, Tennessee.  (Id.)  Plaintiff's duties included, but were not limited to, "maintaining and operating heating and cooling equipment, maintaining and operating emergency equipment, [and] performing maintenance [of] other various types of equipment."  (Id.)

Building operators were members of the engineering department at Hoops.  (Id. ¶ 2.)  During the relevant time period indicated in Plaintiff's Complaint, John Shaw was initially the director of the engineering department and Howard Parker and James Rogers were supervisors.  (Id.; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 2.)  Shaw was terminated in mid-2005 and Parker became the new director of the engineering department.  Other individuals employed in Hoops's engineering department were Breshetta Clark, Bryant Brooks, Jake Michel, Herman Johnson, Barry Callicut, James Flynn, Mark Welsh, Jose Gonzales, and Cedric Rogers.  (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 2.)

On April 19, 2006 Breshetta Clark, the administrative assistant for the engineering department and Co-Plaintiff to this action, lost consciousness at work.  (Def.'s Statement of Undisputed Material Facts ¶ 3.)  While at the hospital, Clark

told Arnetria Knowles, the director of human resources, that she had observed Jake Michel and Bryant Brooks viewing pornographic material on the shared computer in the engineering department. (Id.)

In response to Clark's allegations, Knowles conducted an internal investigation regarding Clark's allegations of pornography being viewed in the workplace. (Id. ¶ 4.) Knowles reviewed internet files taken from the shared computer in the engineering department and attempted to discover who viewed pornographic material based on the username of the building operator associated with each file. (Id.) Knowles also interviewed the employees in the engineering department, including Plaintiff, regarding Clark's allegations. (Id.) Plaintiff did not provide a written statement. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 5.) Based on her investigation, Knowles terminated Plaintiff, Howard Parker, Bryant Brooks, and Jake Michel on June 5, 2006. (Def.'s Statement of Undisputed Material Facts ¶ 6.) Knowles issued written warnings to Herman Johnson, James Flynn, and Barry Callicut. (Id.)

Following Plaintiff's termination, Knowles sent an email on June 7, 2006 to the Hoops staff, approximately 150 employees, referencing allegations of sexual harassment. (Id. ¶ 7; Def.'s

3

Mot. for Summ. J. Ex. 8 (D.E. 196-3 at 70-71).)  Knowles's email

states, in pertinent part:

> We received information alleging that several
> employees in the Engineering Department were viewing
> pornography at work.   As a result of these
> allegations, we conducted a thorough investigation
> and concluded that the allegations were true.   These
> actions violate the Grizzlies sexual harassment
> policy and further amount to stealing time from the
> organization.   Consequently, we terminated Howard
> Parker, Joe Turner, Bryant Brooks, and Gary Michel.
>
> We have a zero tolerance policy for all forms of
> sexual harassment and other abuses of company policy
> and we will take prompt action against anyone in the
> Grizzlies organization that violates these polices.
> The entire organization will receive training on our
> policy against such behavior.   We encourage anyone
> to bring any allegations of violations of this
> policy to our attention.

(Def.'s Mot. for Summ. J. Ex. 8 (D.E. 196-3 at 70-71).)

On June 8, 2006 Plaintiff filed a charge of discrimination

with the Equal Employment Opportunity Commission ("EEOC").  In

his EEOC charge, Plaintiff alleged that he was subject to racial

discrimination and that he was retaliated against for engaging

in activity protected by Title VII.  (D.E. 206-1 at 3 & 7.)  On

May 22, 2007, Plaintiff filed a Civil Warrant in the Court of

General Sessions of Shelby County, Tennessee raising state law

claims of libel and wrongful discharge.  (See Compl. (D.E. 1) ¶

7.)  On June 8, 2007 the EEOC issued Plaintiff a Notice of Right

to Sue.  (See id.)  Plaintiff voluntarily dismissed his case in

General Sessions court on September 5, 2007.  (See id. ¶ 6.)

On September 6, 2007 Plaintiff filed the instant lawsuit. (See generally id.)  In his complaint, Plaintiff alleges hostile work environment, disparate treatment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Id. at 1, 11-12.)  In addition, Plaintiff raises the state law claims of retaliatory discharge[1] and libel.  (Id. at 9-10.)

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate.  Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v. Linden-Alimak, Inc., 799 F.2d

---

[1]     In his complaint, Count II is labeled as "Wrongful Discharge."  Under the liberal pleading standards, the Court construes this count to assert the Tennessee state law tort of retaliatory discharge.

1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

## III. Analysis

Defendant moves for summary judgment as to (1) Plaintiff's claim of a racially hostile work environment, (2) Plaintiff's disparate treatment race discrimination claim, (3) Plaintiff's Title VII retaliation claim, (4) Plaintiff's state law claim for retaliatory discharge, and (5) Plaintiff's libel claim. The Court will address each of Defendant's contentions in turn.

### A.   Hostile work environment

Defendant first contends that the Court does not have subject matter jurisdiction over Plaintiff's claim of a racially

hostile work environment because Plaintiff failed to exhaust his administrative remedies.  (Def.'s Reply Mem. in Supp. of Mot. for Summ. J. ("Def.'s Reply") at 3.)  Second, Defendant contends that under Federal Rule of Civil Procedure 8, Plaintiff's complaint fails to give proper notice of a hostile work environment claim.  (Id. at 5.)  Third, Defendant contends that Plaintiff cannot establish a prima facie hostile work environment claim.  (Id. at 6.)  Having found that Plaintiff failed to exhaust his administrative remedies with respect to his hostile work environment claim, the Court does not reach Defendant's additional grounds for summary judgment.

In order for a federal court to have subject matter jurisdiction over a Title VII claim, a plaintiff must first unsuccessfully pursue administrative relief.  Ang v. Procter & Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991) (citation omitted).  In the Title VII context, this generally requires a plaintiff to file a charge of discrimination with the EEOC and subsequently receive a notice of right to sue before filing suit.  Federal courts do not have subject matter jurisdiction over a plaintiff's claim if the plaintiff fails to raise a Title VII claim before the EEOC.  See id.

In the Sixth Circuit, a plaintiff's failure to check a box to include a specific claim of discrimination in an EEOC charge does not preclude the plaintiff from bringing that uncharged

claim in a judicial complaint if the facts alleged in the EEOC charge should have caused the EEOC to investigate the claim. Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004). In other words, a federal court has jurisdiction over those claims explicitly filed in the EEOC charge and claims that "can reasonably be expected to grow out of that charge." Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998); see also Ang, 932 F.2d at 545 ("The judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."). Under this rule, a claim in a judicial complaint that an adverse action was motivated by a different type of discrimination than what was alleged in the EEOC charge will be precluded unless the newly-claimed basis for the action was sufficiently related to the facts of the EEOC charge. See, e.g., Ang, 932 F.2d at 546.

In the instant case, Plaintiff was unrepresented when he filed his EEOC charge so the Court must broadly construe the charge to determine if a hostile work environment could be inferred. See id. ("Courts require [a] broad reading of the [EEOC] charge because most Title VII claimants are unschooled in the technicalities of the law and proceed without counsel."). The only box checked by Plaintiff in his EEOC charge was the box indicating that he was subject to unlawful retaliation. (See D.E. 206-1 at 3.) In the explanatory section of Plaintiff's

EEOC charge, however, Plaintiff indicated that he was "denied training whereas a similarly[-]situated White employee was afforded training." (Id.) Furthermore, in the EEOC questionnaire attached to Plaintiff's EEOC charge, Plaintiff also indicated that "White guys [got] better equip[ment] to work with, went through more training . . . [and] were paid for being offsite in addition to regular pay." (Id. at 6.)

Construing Plaintiff's EEOC documents broadly, the Court finds that although Plaintiff exhausted his administrative remedies as to a claim of disparate treatment race discrimination, he has not exhausted his administrative remedies with respect to a claim of hostile work environment. Plaintiff's EEOC documents focus solely on discrete acts of discrimination, such as the denial of training, use of sub-standard equipment, and discrepancies in pay. Not once does Plaintiff mention in his EEOC filings that he was subject to racial slurs or any other form of racial harassment that could rise to the level of a hostile work environment.

As noted by the Sixth Circuit in Jones v. City of Franklin, 309 F. App'x 938 (6th Cir. 2009), "[n]o decision in [the Sixth Circuit] has held that EEOC charges regarding discrete acts of discrimination are alone sufficient to put the EEOC on notice of a hostile-work-environment claim. Several unpublished decisions of this court have in fact held to the contrary." Id. at 943

(citing <u>Brown v. City of Cleveland</u>, 294 F. App'x 226, 234–35 (6th Cir. 2008; <u>Scott v. Eastman Chem. Co.</u>, 275 F. App'x 466, 475 (6th Cir. 2008)). Furthermore, the <u>Jones</u> court cited with approval a published opinion from the Fourth Circuit which stated "[t]he sharp differences between [the] evidence [presented for trial] and the allegations in [the plaintiff's] administrative charges compel the conclusion that he failed to exhaust his administrative remedies." <u>Id.</u> at 944 (<u>quoting</u> <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 511 (4th Cir. 2005)).

Although <u>Chacko</u> is distinguishable from the case at bar, the Court is guided by its logic. Specifically, the Court is persuaded that the sharp contrast between the evidence Plaintiff proffered in response to Plaintiff's Motion for Summary Judgment, including sworn statements that he was subject to racial slurs such as "nigger" and "black ass," (Turner Aff. at 2), and the allegations in his EEOC filings, "compels the conclusion that he failed to exhaust his administrative remedies." <u>See Chacko</u>, 429 F.3d at 511.

The Court finds that Plaintiff's administrative filings would not have prompted the EEOC to investigate a racially hostile work environment at Hoops. Plaintiff has therefore not exhausted his administrative remedies as to his hostile work environment claim and Defendant's Motion for Summary Judgment is

GRANTED as it relates to Plaintiff's claim of hostile work environment.

**B.   Disparate treatment race discrimination**

In order to recover under a disparate treatment theory of employment discrimination, Plaintiff must demonstrate that he was treated less favorably than others by his employer because of his race.  Plaintiff may establish a prima facie case of race discrimination under Title VII through direct evidence, or through circumstantial evidence under the McDonnell Douglas burden-shifting framework.  See Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997), reh'g and reh'g en banc denied; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803 (1973).  Because the Plaintiff has put forth only indirect evidence to support his claim of discrimination, the Court will analyze his claim under McDonnell Douglas.

Under McDonnell Douglas, a plaintiff must first make out a prima facie case of discrimination by showing that (1) he is a member of a protected group; (2) he was subject to an adverse employment action; (3) he was qualified for the position and satisfactorily performed his job; and (4) similarly-situated non-protected employees were treated more favorably.  See Russell v. Univ. of Toledo, 537 F.3d 596, 604 (6th Cir. 2008). In this case, it is undisputed that Plaintiff, an African-

American, was a member of a protected class and that he satisfactorily performed his job while employed by Hoops.

Plaintiff asserts that the following constitute "adverse employment action" in violation of Title VII: (1) Defendant failed to compensate Plaintiff for working through lunch breaks, (2) Plaintiff was assigned to perform menial tasks outside of his job description, (3) Plaintiff was given inaccurate "write-ups or reprimands," (4) Plaintiff was denied payment for classes or books needed to prepare for licensing tests, (5) Plaintiff was required to have certain professional licenses that other employees were not required to maintain, and (6) Defendant terminated Plaintiff's employment.  The Court need not address whether the aforementioned conduct constitutes "adverse employment action," however, because Plaintiff has failed to identify any similarly-situated non-protected employees who were treated more favorably than Plaintiff.

In his response to Defendant's Motion for Summary Judgment Plaintiff's sole contention in support of a claim for race discrimination relies on the theory that he was subject to a racially hostile work environment.  (See Def.'s Resp. to Pl.'s Mot. for Summ. J. at 8-12.)  As discussed supra, the Court has already found that Plaintiff's hostile work environment claim fails as a matter of law.  Plaintiff must therefore satisfy his burden of identifying similarly-situated non-protected employees

who were treated more favorably than Plaintiff to proceed under a theory of disparate treatment.  Having not met this burden, Defendant's Motion for Summary Judgment is GRANTED as it relates to Plaintiff's claim of disparate treatment race discrimination.

### C.   Title VII retaliation claim

"Title VII forbids an employer from 'discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] [the so-called 'opposition clause'], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII] [the so-called 'participation clause'].'"  Niswander v. The Cincinnati Ins. Co., 529 F.3d 714, 719-20 (6th Cir. 2008) (citing 42 U.S.C. § 2000e-3(a)) (alterations in original).  Unlawful employment practices under Title VII include any actions taken on the basis of race, color, religion, sex, or national origin that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment."  Id. (citing 42 U.S.C. § 2000e-2).

In the absence of direct evidence of retaliation, courts analyze Title VII retaliation claims at the summary judgment stage using the McDonnell Douglas burden-shifting framework.  Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 544 (6th Cir. 2008).  Under this framework, the plaintiff has the initial

burden to establish a prima facie case of retaliation by showing: (1) he engaged in a protected activity; (2) the defendant knew he engaged in the protected activity; (3) the defendant subsequently took an adverse action against him; and (4) there was a causal connection between the protected activity and the adverse action.  Id.

Once the plaintiff presents sufficient evidence to establish his prima facie case, the burden then shifts to the employer to "produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action."  Id.  The plaintiff must then show that the defendant's proffered reason for the adverse action was a pretext for intentional retaliation.  Id.

### (i)  Prima facie case

In the instant case, Defendant does not dispute that Plaintiff engaged in protected activity when he complained about (1) Howard Parker's alleged racially motivated treatment of Plaintiff and (2) the sexually abusive hostile work environment Co-Plaintiff Breshetta Clark was allegedly subjected to by Hoops's employees.  See Niswander, 529 F.3d at 721 ("The opposition clause . . . covers conduct such as 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices.'" (citation omitted)). Likewise, Defendant does not dispute that it had knowledge that Plaintiff engaged in the protected activity.  The remaining two

elements of Plaintiff's prima facie case of retaliation, adverse action and causal connection, will be discussed in turn.

### (1) Adverse action

The standard for whether an act of retaliation rises to the level of material adversity is an objective one, based on whether the act would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted).  It is undisputed that Defendant's decision to terminate Plaintiff's employment constitutes adverse employment action under the Burlington Northern standard.  Plaintiff also asserts that that the following conduct constitutes "adverse employment action": (1) Defendant's failure to compensate Plaintiff for working through lunch breaks, (2) Plaintiff's assignment to perform menial tasks outside of his job description, (3) Plaintiff's allegedly inaccurate "write-ups or reprimands," (4) Plaintiff's denial of payment for classes or books needed to prepare for licensing tests, and (5) the requirement that Plaintiff have certain professional licenses that other employees were not required to maintain.  The record is not clear as to when most of these specific instances of alleged retaliation occurred relative to when Plaintiff engaged in protected activity.  The Court finds, however, that Plaintiff alleges at least some conduct that may

constitute retaliatory action that occurred after Plaintiff's protected complaints.  A factual dispute therefore exists as to whether the Plaintiff was, in addition to his termination, subjected to objectively adverse, retaliatory actions.[2]

### (2)  Causal Connection

To establish a causal connection between the protected activity and the adverse action, a plaintiff must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action."  Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007) (citations and internal quotation marks omitted).  In general, "mere temporal proximity between an assertion of Title VII rights and a materially adverse action without other indicia of retaliatory conduct is not sufficient to establish the causal connection element of a retaliation claim."  Evans v. Prospect Airport Servs., Inc., 286 F. App'x 889, 895 (6th Cir 2008) (citations omitted).  The Sixth Circuit has clarified, however, that in certain cases, temporal proximity alone may be sufficient to establish the causation element:

> Where an adverse employment action occurs very close
> in time after an employer learns of a protected

---

[2]     The Court notes, however, that at trial the jury can only consider those discrete acts of retaliation that occurred within the limitations period.  As discussed supra, Plaintiff filed his EEOC charge on June 8, 2006. Thus, any alleged retaliatory acts that occurred prior to August 12, 2005 are time-barred under Title VII's requirement that an EEOC charge be filed within 300 days from the date of the alleged unlawful employment practice.

activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

Id. (citing Mickey v. Ziedler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008)).

Here, Plaintiff alleges that he suffered adverse employment actions following his protected activities. Although the exact temporal proximity of the adverse actions to the protected activities is not clear from the record, there is evidence that the timing of the alleged retaliation was close enough to support an inference of retaliatory motive. Thus, there is a factual dispute as to whether a causal connection exists between Plaintiff's asserted protected activities and the alleged adverse actions.

Plaintiff has shown that a genuine issue of material fact exists as to each element of the prima facie case of retaliation. The burden then shifts to Defendant to demonstrate a legitimate, nondiscriminatory reason for its conduct.

### (ii) Legitimate, nondiscriminatory reason

Defendant claims that it had a legitimate, nondiscriminatory reason for any alleged retaliation. Specifically, Defendant asserts that the investigation performed

17

by Arnetria Knowles into allegations of sexual harassment revealed that Plaintiff was one of three employees who viewed an excessively large quantity of pornography.  Accordingly, Defendant asserts that Plaintiff was terminated based on an honest belief that he was viewing pornography on a work computer in violation of company policy.  Because Plaintiff has demonstrated a nondiscriminatory reason for its conduct, the burden shifts to Plaintiff to show that the employer's stated reason for termination was pretextual.

### (iii) Pretext

"A plaintiff who is trying to show that the employer's stated reason for termination is pretextual is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate his [or her] discharge, or (3) that they were *insufficient* to motivate discharge." <u>Niswander</u>, 529 F.3d at 728 (citation and internal quotation marks omitted). Plaintiff argues that he has demonstrated that his termination had no basis in fact.

First, Plaintiff testified under oath that he never accessed any pornographic websites while employed at Hoops. Second, Plaintiff has proffered the sworn testimony of several witnesses, including the alleged victim of the sexual harassment Breshetta Clark, that they never witnessed Plaintiff viewing

pornography at work.  Third, Plaintiff produced evidence that it was common for multiple employees to use the shared engineering computer under a different employee's username if that employee failed to properly log off the computer.  Thus, Plaintiff has proffered sufficient evidence to create a fact question as to whether Defendant's legitimate nondiscriminatory reason for terminating Plaintiff had a basis in fact.

Defendant asserts that Plaintiff's ability to demonstrate that he did not view the pornographic images on the shared engineering computer is irrelevant under the "honest belief rule."  See Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001).  Under the honest belief rule, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."  Id.

Although Defendant asserts a correct statement of the law, the loss of the hard drive containing the information relating to Plaintiff's viewing of pornography precludes Defendant's reliance on the honest belief rule as a matter of law.  As noted by the Sixth Circuit, "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, 'the employer must be able to establish its reasonable reliance on the particularized facts before it at the time the decision was

made.'" Wright v. Murray Guard, Inc., 455 F.3d 702, 708 (6th Cir. 2006) (quoting Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998)).  Without the hard drive, a reasonable juror could infer that Knowles did not have an honest belief in its proffered nondiscriminatory reason.

Because Plaintiff has established a genuine issue of material fact as to whether he has met his prima facie case of retaliation and whether Defendant's nondiscriminatory reasons for its actions are pretextual, Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim is DENIED.

**D.   State law retaliatory discharge**

In addition to his Title VII claims, Plaintiff also raises the state law claim of retaliatory discharge.  In Tennessee a claim of retaliatory discharge may take one of two forms: statutory or common law.  See Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 535-37 (Tenn. 2002).  The Tennessee Supreme Court has held that Tennessee's retaliatory discharge statute (the "Tennessee Public Protection Act" or "TPPA") did not preempt the common law tort of retaliatory discharge.  Id. at 537. Plaintiff may therefore bring a claim under the TPPA and a common law claim of retaliatory discharge concurrently.

**(i)   Statute of limitations**

Defendant first argues that Plaintiff's retaliatory discharge claims are barred by the applicable statute of

limitations.  "A claim for retaliatory discharge is a tort
action which is governed by the general tort statute of
limitations which requires that a lawsuit be 'commenced within
one (1) year after the cause of action accrued . . . .'" Weber
v. Moses, 938 S.W.2d 387, 393 (Tenn. 1996) (citing, inter alia,
Tenn. Code Ann. § 28-3-104).  An employee's cause of action for
retaliatory discharge accrues "when the employee is given
unequivocal notice of the employer's termination decision."
Fahrner v. SW Mfg., Inc. 48 S.W.3d 141, 144 (Tenn. 2001) (citing
Weber, 938 S.W.2d at 393).

It is undisputed that Plaintiff was given notice of
Defendant's termination decision on June 5, 2006.  On May 22,
2007 Plaintiff filed a Civil Warrant in the Court of General
Sessions of Shelby County, Tennessee raising his retaliatory
discharge claims.  Plaintiff therefore filed suit within the one
year statute of limitations.  Plaintiff voluntarily dismissed
his suit in general sessions court on September 5, 2007.
Tennessee's savings statute provides a plaintiff one year to
refile a claim after a judgment is entered "upon any ground not
concluding the plaintiff's right of action."  Tenn. Code Ann.
28-1-105(a).  Plaintiff filed the instant suit on September 6,
2007, within one year of his voluntary dismissal.  Thus,
Plaintiff's retaliatory discharge claims are not time-barred.

### (ii) Prima facie case

In this case, the Court construes Plaintiff's complaint to assert a claim for retaliatory discharge under both the common law and the TPPA.  "To prevail under the TPPA, the plaintiff must establish (1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, 'illegal activities' as defined under the [TPPA]; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination."  Franklin v. Swift Trans. Co., Inc., 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006) (citing Tenn. Code Ann. § 50-1-304).  The term "illegal activities" is statutorily defined as "activities that are in violation of the criminal or civil code of this state or the United States or [any] regulation intended to protect the public health, safety, or welfare."  Id. (citing Tenn. Code Ann. § 50-1-304(a)(3)).

Similarly, a plaintiff asserting a common law retaliatory discharge claim must show "(1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him

was his exercise of protected rights or his compliance with clear public policy." Id. (citing Crews v. Buckman Lab. Int'l Inc., 78 S.W.3d 852, 862 (Tenn. 2002)). The essential difference between the statutory cause of action and the common law cause of action is that with the common law cause of action a plaintiff need only show that his activity was a substantial factor in effectuating his discharge rather than showing it was the sole reason for his discharge. Guy, 79 S.W.3d at 537.

Unlike establishing a prima facie case of Title VII retaliation, which is not an "onerous" task, see Lindsay v. Yates, 578 F.3d 407, 416 (6th Cir. 2009), Tennessee courts have recognized "that [a] plaintiff has indeed a formidable burden in establishing" a prima facie case of retaliatory discharge. Hill v. Perrigo of Tenn., No. M20000-02452-COA-R3-CV, 2001 WL 694479, at *5 (Tenn. Ct. App. June 21, 2001).

Plaintiff alleges that he was terminated for reporting building and safety code violations to the Shelby County building inspector. Plaintiff's retaliatory discharge claim must fail, however, because Plaintiff does not provide the specific statute or regulation upon which he bases his claim. As noted by the Tennessee Court of Appeals, "the [Tennessee Supreme Court] in Guy v. Mutual of Omaha stated clearly that [courts] do not simply look at whether a law or regulation has been violated, but 'rather, [the] inquiry focuses on whether

23

some important public policy interest embodied in the law has been furthered' by the employee's actions." Franklin, 210 S.W.3d at 532 (quoting Guy, 79 S.W.3d at 538).

In the instant case, Plaintiff merely states, in conclusory fashion, that he was terminated for reporting Defendant's "continual violation of building and safety codes." (Def.'s Resp. at 16-17.) Plaintiff's failure to allege a specific statutory or regulatory basis for his claim of retaliatory discharge precludes the Court from determining whether Defendant violated a statute or regulation that implicates (1) "the public health, safety, or welfare" as required by the TPPA or (2) "important public policy concerns" as required by the common law. See Franklin, 210 S.W.3d at 529-30. The Court cannot assume that any violation of a statutory or regulatory scheme implicates fundamental public policy concerns. See id. at 532 (rejecting the plaintiff's argument that "*any* regulatory infraction by an employer, no matter how minor, can support a claim of retaliatory discharge"); see also VanCleave v. Reelfoot Bank, No. W2008-01559-COA-R3-CV, 2009 WL 3518211, at *4 (Tenn. Ct. App. Oct. 30, 2009) ("If the statutory or regulatory infraction relied upon by [the plaintiff] does not implicate fundamental public policy concerns, then her claim of retaliatory discharge fails.").

Because Plaintiff has not met his burden of demonstrating that the regulatory infraction allegedly committed by Defendant implicates fundamental public policy concerns, Plaintiff's retaliatory discharge claim must fail. Defendant's Motion for Summary Judgment as to Plaintiff's statutory and common law retaliatory discharge claims is therefore GRANTED.

**E.    Defamation**[3]

Plaintiff asserts that as a result of the email sent by Arnetria Knowles to the Hoops staff, Defendant is liable for defamation. To assert a prima facie case of defamation in Tennessee, the plaintiff must establish that (1) a party published a statement, (2) with knowledge that the statement is false and defaming to the other, or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999). Defendant asserts that Plaintiff's defamation claim fails as a matter of law because (1) the email at issue was not "published," and (2) Defendant did not have knowledge that the statements in the email were false, nor did Defendant disseminate the email with reckless

---

[3]    In his complaint, Plaintiff alleges that Defendant libeled him. Libel is not a cause of action separate and distinct from the tort of defamation. Rather, libel is simply the written form of defamation. See, e.g., Davis v. The Tennessean, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001). The Court will therefore refer to Plaintiff's libel claim as "defamation."

disregard for its truth or with negligence in failing to ascertain the truth of the statement.

### (i) Publication

Under Tennessee law, publication is an essential element of a defamation action.  Applewhite v. Memphis State Univ., 495 S.W.2d 190, 192-93 (Tenn. 1973).  Tennessee has adopted the rule that "where [a] communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable [defamation]."  Freeman v. Dayton Scale Co., 19 S.W.2d 255, 256 (Tenn. 1929).  Defendant contends that Plaintiff cannot satisfy the publication element of his defamation claim because the email at issue falls under this rule.

In support of this contention, Defendant relies on Woods v. Helmi, 758 S.W.2d 219 (Tenn. Ct. App. 1988).  In Woods, the plaintiff, a certified nurse anesthetist, sued her supervisors and others in the anesthesiology department for alleged defamation.  Id. at 220.  The plaintiff and her supervisor were both employed by the Regional Medical Center in Memphis ("The Med").  Id.  The plaintiff's supervisor issued a memorandum concerning plaintiff's behavior in the operating room that was sent to members of the staff with supervisory responsibilities. Id. at 221.

Under the rule articulated in <u>Freeman</u>, the <u>Woods</u> court found that the memorandum was not published for purposes of a defamation claim.  <u>Id.</u> at 222.  In so finding, the court stated:

> While many of the cases denying the existence of a publication speak in terms of corporations communicating to or with itself, it seems to this Court that *more essential to the issue is the concept of "need to know," with the communication flowing through the proper chain of command, particularly in employee performance reviews or disciplinary action.*

<u>Id.</u> at 223 (emphasis added).  Thus, the court identified the critical element in the <u>Freeman</u> rule to be "the concept of 'need to know'" as opposed to the employer/employee relationship.

Under the instant facts, Defendant's reliance on <u>Woods</u> is misplaced.  In <u>Woods</u>, the dissemination of the alleged defamatory material was made within a particular management structure, i.e. within the "'need to know' pipeline."  <u>Id.</u> at 223.  Here, the email was sent to approximately 150 employees. (<u>See</u> Def.'s App. of Exs. in Supp. of Mot. for Summ. J. (D.E. 196-3) at 70-71).  The record is not clear as to the identity of each recipient relative to his or her job position within the Hoops organization.  The Court finds, however, that the number of recipients is sufficient to create a fact question as to whether the email was sent to individuals outside the "'need to know' pipeline."

**(ii) Knowledge of falsity, reckless disregard for the truth, or negligence to ascertain its truth**

Plaintiff must not only show that Defendant published the email, but that it did so with knowledge that the email contained false information, with reckless disregard for the truth of the email, or with negligence in failing to ascertain the truth of the email. <u>Sullivan</u>, 995 S.W.2d at 571. Defendant contends that Plaintiff cannot show actual knowledge, recklessness, or negligence in regards to the truth of the information contained in the email at issue. Plaintiff, however, has produced evidence that he did not view pornography while employed by Defendant. Therefore, an issue of fact exists as to the falsity of the email.

Furthermore, Plaintiff has produced evidence that the engineering computer was lost while in Defendant's possession. Because the engineering computer contained the information on which Arnetria Knowles allegedly based her decision to terminate, the absence of such evidence is enough to create a fact issue as to whether Defendant was at least negligent in ascertaining the truth of the information in the email at issue.

Defendant's Motion for Summary is hereby DENIED as it relates to Plaintiff's defamation claim.

**IV.  Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED as it relates to Plaintiff's Title VII retaliation claim and defamation claim.  Defendant's Motion for Summary Judgment is GRANTED as it relates to Plaintiff's claims of hostile work environment, disparate treatment, and retaliatory discharge.  Plaintiff's Motion to Strike (D.E. 216) is hereby DENIED AS MOOT.

**IT IS SO ORDERED,** this 1st day of April, 2010.

/s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE
